UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARRY DE PRINS,<br>        Plaintiff<br><br>v.<br><br>MICHAEL J. MICHAELES, Personal Representative of the Estate of Donald Belanger and Trustee of The Donald Belanger Irrevocable Trust and THE DONALD BELANGER IRREVOCABLE TRUST DATED October 28, 2008<br><br>        Defendants. | CIVIL ACTION<br>NO. 15-40093-TSH |

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
**September 26, 2018**

HILLMAN, DJ.

### Introduction

Plaintiff Harry De Prins ("Plaintiff" or "De Prins") asserts a single claim against Defendants Michael J. Michaeles, as Personal Representative of the Estate of Donald Belanger and Trustee of the Donald Belanger Irrevocable Trust, and the Donald Belanger Irrevocable Trust Dated October 28, 2008 (collectively, the "Defendants") for action to reach and apply interest in a trust after a judgment. This Order addresses both Plaintiff's Motion for Partial Summary Judgment (Docket No. 115) and Defendants' Motion for Summary Judgment (Docket No. 106). For the reasons set forth below, Defendants' motion is *denied* and Plaintiff's motion is *granted*.

## Procedural and Factual Background

Donald and Ellen Belanger moved from Massachusetts to Arizona in 2000. In Arizona, the couple disagreed with their neighbors, Armand and Simone DePrins, parents of plaintiff Harry DePrins, about shared water rights and ended up in court. The Belangers lost the law suit and in June of 2008, moved to California. Ellen Belanger committed suicide in California in October of 2008.

Donald Belanger moved back to Arizona to live with his daughter. Shortly after moving there, Belanger created the Donald A. Belanger Irrevocable Trust, dated October 28, 2008. Donald Belanger's trust was a self-settled trust, where he, the beneficiary, was also the settlor. and conveyed substantially all of his assets to Defendant Michaeles, as Trustee of the Trust. At the time of settling the Trust, Belanger was a resident of and/or domiciled in the State of Arizona. Belanger executed the Trust, as well as his Last Will and Testament, in the State of Arizona. (SOF ¶2). During the winter, becoming more depressed and talking about suicide, Belanger made plans to move back east to Connecticut to live with his sister. On March 2, 2009, Belanger shot and killed Armand and Simone DePrins in a Walmart Supercenter store in Show Low, Arizona. The next morning, on March 3, 2009, Belanger was pulled over on a highway in New Mexico and shot and killed himself before the officer got to his car.

Following the murder of his parents by Belanger, Plaintiff brought a wrongful death action (the "Wrongful Death Action") against, among others, Defendant Michaeles, as Personal Representative of the Estate of Donald Belanger (the "Estate")[1]. Later, the Wrongful Death Action was removed by one of the defendants in that case to the United States District Court for the District of Arizona (Docket No. 10-08133-DKD). Initially, in his Answer filed September 13,

---

[1] Civil Docket No. 2010-000299, Navajo County Superior Court for the State of Arizona.

2011, Michaeles, acting in his capacity as the Personal Representative of the Estate, had denied that Belanger was responsible for the deaths of Simonne and Armand DePrins. On September 30, 2014, Michaeles amended the Estate's Answer in the Wrongful Death Action to admit that Donald Belanger had "mortally wounded by gunfire Plaintiff's decedents" Simonne DePrins and Armand DePrins.

In or about July of 2015, Harry DePrins, as Creditor in the probate action for the Estate (Superior Court of Navajo County, Arizona, Docket No. 2010-00048) (the"Probate Action") and Plaintiff in both the Wrongful Death Action and the present action, entered into a stipulation in open court with Michael J. Michaeles, as the Personal Representative of the Estate in the Probate Action and the Wrongful Death Action. In that stipulation, the parties agreed that: (1) Plaintiff's claim against the Estate shall be settled by entry of an agreement for judgment for the Plaintiff against the Estate in the amount of $750,000 in the Wrongful Death Action (10-08133-DKD, Doc. No. 73); (2) collection of the judgment will be exclusively against the Trust in the enforcement action; and, (3) the enforcement action, which was originally filed in the District of Arizona (14-08230), would be transferred to the United States District Court for the District of Massachusetts in Worcester (15-40093-TSH, Doc. No. 21) (hereinafter the "Stipulation").

In accordance with that Stipulation and Order, the parties filed a Joint Motion for Entry of Judgment in favor of the Plaintiff and against Defendant Michaeles, as Personal Representative of the Estate, in the amount of $750,000 in the Wrongful Death Action on July 8, 2015 (the "Joint Motion"). Pursuant to the Joint Motion, the District Court for the District of Arizona entered a final judgment in the Wrongful Death Action in favor of the Plaintiff against the Defendant Michaeles as Personal Representative of the Estate in the amount of $750,000 on July 9, 2015 (the "Consent Judgment"). Plaintiff Harry DePrins has made demand on Michael J.

Michaeles, both as the Personal Representative of the Estate and as the Trustee of the Trust, to convey Trust property to satisfy the Consent Judgment. Defendants have not done so. Plaintiff commenced this action in United States District Court for the District of Arizona on November 28, 2014 to enforce and collect the Consent Judgment from the assets of the Defendant Donald Belanger Irrevocable Trust dated October 28, 2008 (the "Trust"). Upon stipulation of both parties, the action was transferred to this Court.

The Defendants move for summary judgment, dismissing plaintiff DePrins' Second Amended Complaint, with prejudice, on the grounds that: 1) the one year statute of limitations expired; 2) Belanger's interest in the Trust terminated on March 3, 2009, the date of his death, and as of that date, he had no interest in the Trust to be reached; 3) the spendthrift provision of the Trust precludes DePrins' claim; 4) Massachusetts law holds that a voluntary conveyance to a child is not fraudulent to existing creditors as a matter of law;  and 5) DePrins has no admissible evidence the Trust was fraudulently created and that the therefore the Trust is entitled to judgment as a matter of law.

Plaintiff files this Motion For Partial Summary Judgment for the reasons that: 1) Plaintiff has shown indisputable facts of a common law, non-statutory reach and apply action to reach the assets of The Donald Belanger Irrevocable Trust Dated October 28, 2008 (the "Trust") in satisfaction of the Consent Judgment; 2) Plaintiff has shown indisputable facts sufficient to show a statutory reach and apply action under M.G.L. c. 214, s. 3(6) to reach the assets of the Trust in satisfaction of the consent Judgment; and 3) the Trust's assets are reachable even though the Trust instrument contains language stating that it is "irrevocable."

## Discussion[2]

*Standard of Review*

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when the evidence is such that it would permit a reasonable factfinder to find in favor of either party with regards to that particular point. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit under the applicable law. *Id.* It is the burden of the moving party to establish the lack of genuine issues of material facts, entitling them to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). This burden can be made by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325). The court must look to "the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in the party's favor". *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

---

[2] Venue was transferred from Arizona to Massachusetts, and this Court is obligated to apply the substantive law of Arizona where this case originated. *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). Arizona Courts follow the "most significant relationship test" under the Restatement (Second) of Conflict of Laws (1971 and Supp. 1988) in determining choice-of-law issues. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 268 n. 2, 77 P.3d 439, 441 n.2 (2003); *Garcia v. General Motors Corp.*, 195 Ariz. 510, 516-17, 990 P.2d 1069, 1075-76 (1999). Arizona follows the doctrine of depecage in resolving conflicts of laws, thereby allowing the courts to apply different state laws to different issues based on the applicable choice of law principles. *See Bryant v. Silverman*, 146 Ariz. 41, 42-43, 703 P.2d 1190, 1191-1192 (1985) (internal citations omitted). Applying Arizona conflict of law principles under the Restatement, Arizona law governs the issues concerning the preclusive effect of the Consent Judgment and the time limitations for bringing a claim against the personal representative of a decedent's estate, while Massachusetts law governs issues concerning the claims against the Trust.

*Statute of Limitations*

Defendants contend that the entire action is time barred by the one year statute of limitation, Mass. Gen. L. c. 190B, §3-803(b), which prohibits creditors from reaching trust assets if suit is not filed within one year of the grantor's death, which he claims requires the limitation to be March 3, 2010, one year after Belanger took his own life. Plaintiff argues that his Complaint is not time barred because his claim of reach and apply would be held to the statute of limitations set forth in Mass. Gen. L. c. 260 §20, allowing 20 years.

With respect to the absence of a limitation period for judgments, *see* Mass. Gen. Laws c. 260, § 20 (" A judgment decree of a court of record of the United States or of any state thereof shall be presumed to be paid and satisfied at the expiration of twenty years after it was rendered."), the Defendants state that "[i]n no sense would such a period act as a true statute of limitations to bar a claim based on the passage of time." A period of limitations of 20 years for actions on judgments applies to judgment creditor's suit for creditor's bill against judgment. *See Foster v. Evans* (1981) 429 N.E. 2d 995, 384 Mass. 687.

*Reach and Apply*

Massachusetts law clearly holds that a creditor may "reach and apply" a debtor's interest in intangible property that cannot otherwise be executed against in an action at law, Mass. Gen. L. c. 214, § 3(6), including a debtor's beneficial interest in trusts. *Tilcon Capaldi, Inc. v. Feldman*, 249 F.3d 54, 59 (1st Cir. 2001), *citing New Eng. Merchs. Nat'l Bank of Boston v. Hoss,* 356 Mass. 331, 249 N.E.2d 635, 638 (1969). A non-statutory reach and apply action requires three elements, requiring that creditor have secured judgment, unsuccessfully sought to execute on judgment, and "property which could not be taken on execution at law." *Cavadi v. DeYeso*, 458 Mass. 615, 625, 941 N.E.2d 23, 32 (2011). Recovery under the third step requires

6

plaintiff to show that the "property, by its nature, is incapable of attachment or of taking on execution in a legal action." *Massachusetts Electric Co. v. Athol One, Inc.*, 391 Mass. 685, 462 N.E.2d 1370, 1372 (1984); *see In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 904 (1st Cir. 1988) ("creditor can reach and apply in payment of any 'debt' a variety of a debtor's interests that are unavailable for ordinary attachment or levy"). An equitable asset of the debtor held in trust is a classic example of a debtor's interest not recognized by a court of law. *See Cavadi*, 458 Mass. at 625 ("intangible assets and assets held in trust" are "classic examples" of equitable assets "not recognized by courts of law"); *see also Eaton v. Federal Nat. Mortgage Association*, 462 Mass. 569, 969 N.E.2d 1118, 1125 n.10 (2012) (describing resulting trust in that case as "an equitable device"), *see also Allied Home Mortg. Capital Corp. v. Mark,* 2014 WL 4964728, at *8 (D.Mass. Sept. 30, 2014).

Each of the three elements required in a common law reach and apply action under Massachusetts law can be found here. Plaintiff obtained a secured judgment against the Estate in the amount of $750,000, dated July 9, 2015, *see Attachments to Plaintiff's Statement of Material Facts L.R. 56.1 (Attachment),* Attachment G, p.162 §1 (Docket No. 117-7), the collection of which would be exclusively against the Trust. *See* Attachment E, p.158 (Docket No. 117-5). The past decade of litigation speaks to both an unsuccessful attempt to execute on the judgment and the unavailability of a legal remedy. Because legal title to and possession of the funds was in the name of the Trust at the time of the entry of the Consent Judgment in the wrongful death case, Plaintiff had no legal remedy either by attachment or levy on execution. See *Tilcon Calpaldi*, 249 F. 3d at 61.

*Spendthrift Trusts*

Citing *Tilcon Capaldi*, Defendants contend that the spendthrift provision of the Trust prevents any creditor from reaching and applying a debtor's interest. *See Tilcon Capaldi*, 249 F.3d at 59. The spendthrift provision is codified in the Massachusetts Uniform Trust Code, M.G.L. c. 203E, § 505(a)(2), inserted by St. 2012, c. 140 § 56, which provides that notwithstanding the presence of a spendthrift provision, "[w]ith respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit." *Id*. *See* Restatement (Second) of Trusts § 156(2) (1959) ("Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit"). *See also* Restatement (Third) of Trusts § 58 (2003).

A recent Appeals Court case in Massachusetts, expounds on the issue of spendthrift clauses based on facts similar to the one at bar. *See Calhoun v. Rawlins*, 2018 WL 3131023, at *2-3 (Mass. App. Ct. June 27, 2018).[3] "When faced with the question whether creditors may reach the assets of spendthrift trusts, our cases distinguish between spendthrift trusts that are created by third parties, such as parents, and spendthrift trusts that are self-settled by an individual who is both settlor and beneficiary. It has long been the law in this Commonwealth that a trust created by a third-party settlor may protect a beneficiary's interest in the trust from creditors through spendthrift provisions." *Calhoun*, 2018 WL 3131023, at *2-3, *citing Broadway*

---

[3] That case also involved a self-settled, irrevocable trust in which the settlor did not limit the amount which the trustee, under the terms of the trust could pay him or apply for his benefit. The plaintiffs in *Calhoun* were attempting to recover damages from the trust of the settlor, stemming from an auto accident that injured the plaintiffs and killed the settlor.

*Natl. Bank v. Adams, 133 Mass. 170, 173–174 (1882); Pacific Natl. Bank v. Windram, 133 Mass. 175, 176 (1882).*

Self-settled trusts, where the beneficiary is also the settlor, cannot be used to protect one's assets from creditors. *Id* at *3. "The established policy of this Commonwealth long has been that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors." *Ware v. Gulda*, 331 Mass. 68, 70, 117 N.E.2d 137 (1954), quoting from *Merchants Natl. Bank v. Morrissey*, 329 Mass. 601, 605, 109 N.E.2d 821 (1953). "When a person creates for his own benefit a trust for support or a discretionary trust, his creditors can reach the maximum amount which the trustee, under the terms of the trust, could pay to him or apply for his benefit." *State St. Bank & Trust Co. v. Reiser*, 7 Mass. App. Ct. 633, 636, 389 N.E.2d 768 (1979). "This is so even if the trust contains spendthrift provisions," *id,* and applies even though the trustee may not have made any distributions to Belanger prior to his death, per the express terms of the Trust, the Trustee could have distributed the full amount of the Trust to Belanger. *See Tilcon Capaldi,* 249 F.3d at 60 ("[e]ven if the trustee chooses not to make any payments to the beneficiary, a creditor may still reach the maximum amount the trustee could pay.") *Citing* 2A Scott & Fratcher, Law of Trusts § 156.2, at 178 (1987)). Here, as in *Calhoun*, the proper application of G. L. c. 203E, § 505(a)(2) allows the Plaintiff to access the Trust on the facts and cirumstances of this case.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 106) is **denied** and Plaintiff's Motion for Partial Summary Judgment is granted (Docket No. 115).

**SO ORDERED**.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**